UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:25-cv-23640-DPG/DSW

THE SHAPING ACADEMY
FOR BEHAVIORAL HEALTH
DEVELOPMENT, INC.,
a Florida profit corporation,

      Plaintiff,

v.

AETNA BEHAVIORAL HEALTH LLC,
a foreign limited liability company,

      Defendant.

_____/

## OMNIBUS REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on the Motion and Incorporated Memorandum of Law to Compel Arbitration ("Motion to Compel Arbitration") [ECF No. 6] filed by Defendant, Aetna Behavioral Health LLC ("Defendant" or "Aetna") and the Emergency Motion for Temporary Injunctive Relief and Temporary Preliminary Injunction ("Motion for Preliminary Injunction") [ECF No. 1-5] filed by Plaintiff, The Shaping Academy for Behavioral Health Development, Inc. ("Plaintiff" or "Shaping Academy"). Pursuant to the referral [ECF No. 19] by the Honorable Darrin P. Gayles, the Court heard argument on the Motion to Compel Arbitration and held an evidentiary hearing on the Motion for Preliminary Injunction on September 25, 2025 [ECF No. 67].

For the reasons stated below, the undersigned recommends that Defendant's Motion to Compel Arbitration [ECF No. 6] be **GRANTED** and Plaintiff's Motion for Preliminary Injunction [ECF No. 1-5] be **DENIED**, and this case be **STAYED** pending arbitration proceedings.

## I. BACKGROUND

This dispute arises from an agreement (the "Provider Agreement") between Plaintiff Shaping Academy, a behavioral health services provider, and Defendant Aetna, a health insurer. Under the Provider Agreement, Plaintiff rendered medical services to Aetna's members. Aetna, in turn, administered and processed claims for reimbursement of those services according to the members' plan terms and the Provider Agreement. The Provider Agreement authorizes Aetna to audit Plaintiff's reimbursement claims and ties payment to Plaintiff's participation in those audits as part of Aetna's coverage determinations.

In September 2024, Aetna advised Plaintiff that it was auditing some of Plaintiff's reimbursement claims and requested supporting medical records. Eight months later, on May 23, 2025, Aetna sent a letter noting that it had made several unsuccessful attempts to obtain those records. Aetna's letter warned that future reimbursement claims submitted by Plaintiff without required documentation would be denied pending receipt of those records. On June 1, 2025, Aetna provided written notice to Plaintiff of its intent to terminate the Provider Agreement without cause. At Plaintiff's request, Aetna extended the termination's effective date to September 6, 2025, to ensure compliance with the Provider Agreement's ninety-day notice period.

On August 1, 2025, Plaintiff filed a one-count complaint for declaratory relief in Florida state court, alleging that Aetna "breached its own plan terms for its failure to promptly pay Claims to the Plaintiff pursuant to the [Provider Agreement]" and seeking a declaration that "[Aetna] violated the terms of the [Provider Agreement] by withholding payment to Plaintiff for services

provided to Aetna members . . . [and] to declare that Plaintiff's rights were violated." Compl. ¶ 37, 13, ECF No. 1-1. At the time Plaintiff's action was filed, Aetna's review of Shaping Academy's submitted records pursuant to its audit was ongoing, and Aetna had not issued a final determination on the reimbursement claims contemplated by its May 23, 2025, pre-payment review letter.

Shaping Academy also filed the Motion for Preliminary Injunction seeking emergency injunctive relief to enjoin Aetna "from taking any further steps to continue to withhold payment for services rendered by Plaintiff and that Aetna be required to comply with the terms of the [Provider Agreement] between the parties and issue payment immediately." ECF No. 1-5 at 6. In its motion, Plaintiff asserts a likelihood of success on the merits, asserting that "Aetna has clearly breached the contract." *Id.* at 9-10. Plaintiff further argues that it lacks an adequate remedy at law because "time is of the essence," and continued nonpayment of approximately $600,000 for services already rendered threatens Shaping Academy's ability to continue operations. *Id.* at 9-10. Lastly, Plaintiff maintains that the public interest favors enforcing contractual and statutory payment obligations, including Florida's prompt-payment statute, Fla. Stat. § 627.6131, and preventing undue harm to providers that are lawfully owed payment. *Id.*

On August 13, 2025, Defendant removed Plaintiff's action to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and opposed Plaintiff's Motion for Preliminary Injunction. *See* ECF No. 22. Aetna argues, among other things, that (1) Plaintiff's Complaint seeks only a declaration concerning past payment disputes rather than any ongoing or prospective rights, and therefore, does not present an actual controversy amenable to declaratory relief; (2) any declaratory judgment claim is unripe while Aetna's audit is pending; (3) Plaintiff has an adequate remedy at law in contract damages precluding equitable relief; and (4) an order compelling payment of

3

unprocessed claims would circumvent the parties' agreed audit procedures and contravene public policy. *Id.*

Aetna also moved to compel arbitration under Section 7.2 of the Provider Agreement, which requires confidential, binding arbitration before the American Arbitration Association of "[a]ny controversy or claim arising out of or relating to this Agreement, including breach, termination, or validity," except for "injunctive relief or any other form of equitable relief." *See* ECF No. 17 at 6. Aetna contends that Plaintiff's action concerns past due payments, rather than the interpretation of any ongoing or future rights. *Id.* at 8. In addition, Aetna argues that Plaintiff's request for a "declaration of breach," together with its request for injunctive relief compelling Aetna to issue payment, in substance alleges that Aetna breached the Provider Agreement and seeks damages to recover from that breach. *Id.* at 9. Aetna also maintains that no prospective obligations remain to be declared because the Provider Agreement was terminated on September 6, 2025, and thus, the dispute falls within the scope of its arbitration provision. *Id.*

In its response, Plaintiff argues that its suit, on its face, seeks equitable and injunctive relief and is therefore excluded from arbitration under the Provider Agreement's carve-out in Section 7.2 for "injunctive or other equitable relief." *See* ECF No. 12 at 5. Plaintiff maintains that the carve-out is categorical and must be enforced as written. *Id.* Plaintiff also disputes Aetna's characterization that no forward-looking rights remain to be declared. *Id.* at 8. Plaintiff asserts that Section 5.4 of the Provider Agreement imposes ongoing obligations on Aetna to cover certain members who are in active treatment for up to six months after termination. *Id.* Aetna, in its reply, counters that Section 5.4 applies only to inpatient facilities and does not apply to Shaping Academy's outpatient behavioral health services. *See* ECF No. 14 at 2-3. In Aetna's view, Plaintiff's new reliance on Section 5.4, raised for the first time in its opposition to Defendant's

4

Motion to Compel Arbitration rather than in its Complaint, attempts to "manufacture future rights" where none exist, and the dispute remains limited to past due payments. *Id.*

The undersigned held an evidentiary hearing on Plaintiff's Motion for Preliminary Injunction and heard argument on Defendant's Motion to Compel Arbitration on September 25, 2025. *See* ECF No. 67. During the evidentiary hearing, Shaping Academy's clinical director, Dr. Yanvis Machado-Gonzalez, testified that Shaping Academy stopped treating Aetna members on July 18, 2025, except for one patient who continued treatment until the termination date of the Provider Agreement on September 6, 2025. The record reflects that Shaping Academy ceased services because it was unable to fund payroll after Aetna, its largest revenue source at the time, stopped making payments, resulting in layoffs and additional debt to sustain operations. Dr. Machado-Gonzalez further testified that Aetna did not invoke Section 5.4 of the Provider Agreement following Aetna's June 1, 2025, termination notice, and that Aetna did not request Shaping Academy to continue providing services under that provision or any other.

## II. LEGAL STANDARD

### A. Defendant's Motion to Compel Arbitration

The Federal Arbitration Act "leaves no room for the exercise of discretion by a district court but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985)). "All doubts regarding the scope of an arbitration agreement must be resolved in favor of arbitration." *Vivas v. Safran Nat'l Bank of New York*, No. 1:10-CV-21811-ASG, 2010 WL 11602462, at *10 (S.D. Fla. Nov. 8, 2010) (quoting *Maguire v. King*, 917 So. 2d 263, 266 (Fla. Dist. Ct. App. 2005)). "In determining whether to compel arbitration, the Court considers three

factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Fluent, LLC*, 297 F. Supp. 3d at 1341. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Griggs v. Kenworth of Montgomery, Inc.,* 775 F. App'x 608, 612 (11th Cir. 2019).

"Where a complaint presents squarely arbitrable issues for adjudication, a party may not sidestep arbitration by selectively couching the underlying dispute in terms of . . . or declaratory judgment." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 689 (S.D. Fla. 2001), *aff'd in part*, 312 F.3d 1349 (11th Cir. 2002) (internal quotations omitted). The Eleventh Circuit instructs courts to "look behind the procedural vehicle used in a complaint to discern what true relief is sought." *See Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 883 (11th Cir. 2015); *see also Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir.1996) ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, a court must focus on the allegations in the complaint rather than the legal causes of action asserted."). Courts in this Circuit have applied this framework in assessing arbitrability, noting that a party cannot transform an otherwise arbitrable dispute into a non-arbitrable one through "artful pleading." *See MedPartners, Inc.*, 203 F.R.D. at 686; *see also Allertek Sys.*, *LLC v. Pillar Wellness & Rehab, Inc.*, No. 07-80971-CIV, 2008 WL 11333231, at *4 (S.D. Fla. Apr. 16, 2008) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 622 n.9 (1986)) ("If the factual allegations of a dispute 'touch matters' covered by an arbitration agreement, those matters should be arbitrated 'whatever the legal labels attached to those allegations.'").

### B. Plaintiff's Motion for Preliminary Injunction

Rule 65 of the Federal Rules of Civil Procedure authorizes courts to issue preliminary injunctions. To obtain a preliminary injunction, a movant must establish four elements: (1) substantial likelihood of success on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *ACLU of Fla. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (internal quotations omitted). Failure to show any of the four factors is "fatal" to a request for preliminary injunctive relief. *Id.*

## III. ANALYSIS

### A. Defendant's Motion to Compel Arbitration

As Plaintiff neither disputes the validity of the arbitration provision in Section 7.2 of the Provider Agreement nor whether Defendant has waived its right to arbitrate, the Court will only examine whether arbitrable issues exist.

#### 1. Plaintiff's Claim for Declaratory Relief is Legal in Nature, and, Therefore, is Arbitrable Under the Provider Agreement.

Plaintiff seeks to avoid arbitration by pursuing a claim for declaratory judgment. The Provider Agreement requires "[a]ny controversy or claim arising out of or relating to this Agreement, including breach, termination, or validity," except for "injunctive relief or any other form of equitable relief." *See* ECF No. 17 at 6. "Suits for declaratory judgment are a statutory creation enacted by Congress in the Declaratory Judgment Act, 28 U.S.C.A. secs. 2201–02 and are neither inherently legal nor equitable in nature." *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520,

1523 (11th Cir. 1987). "When determining whether a declaratory judgment action is legal or equitable, 'courts have examined the basic nature of the issues involved to determine how they would have arisen had Congress not enacted the Declaratory Judgment Act.'" *Id.*; *see, e.g., Jackson Nat'l Life Ins. Co. v. Crum*, No. 1:17-CV-03857-WMR, 2023 WL 6442932, at *6 (N.D. Ga. July 20, 2023) (holding that a declaratory judgment action was legal, not equitable, where the subject dispute concerned an insurer's payment obligations under a policy, and absent the Declaratory Judgment Act, the matter would proceed as a contract action for money damages).

In determining whether the carve-out applies, the focus is on the substance of Plaintiff's allegations and the nature of the relief sought, rather than the label of its pleading. Plaintiff's complaint, styled as a "Complaint for Declaratory Relief," alleges that Aetna wrongfully denied payment and coverage for services provided, totaling approximately $600,000. Compl. ¶7, ECF No. 1-1. It further asserts that, if "the Court finds Aetna violated Plaintiff's contractual or statutory rights, Aetna shall be obligated to cease the withholding of payment for services already provided." *Id.* ¶44. In addition, the Complaint's prayer for relief expressly asks the Court to "enter a declaratory judgment declaring that [Aetna] violated the terms of the Contract" and to "declare that Plaintiff's rights were violated." *Id.* at 13 (Prayer for Relief).

Taken together, Plaintiff's allegations seek a determination of liability for Aetna's conduct and the recovery of money for Aetna's alleged nonpayment of reimbursement claims. Plaintiff's complaint does not identify any future right or provision of the Provider Agreement for which it needs a declaration from the Court. At the hearing, Plaintiff conceded that it ultimately seeks a determination that Aetna's conduct does not comply with the Provider Agreement—which is in essence a breach of contract claim.

Although not alleged in its Complaint, Plaintiff's response to Defendant's Motion to Compel Arbitration attempts for the first time to identify future rights to be declared stemming from Section 5.4 of the Provider Agreement. *See* ECF No. 12 at 8. Section 5.4 addresses "continuity-of-care" obligations and states that, upon termination, Shaping Academy agrees to continue services only "at [Aetna's] discretion to: (a) any Member under [Shaping Academy's] care who, at the time of the effective date of termination, is a registered bed patient at a hospital or facility . . ." *Id.* During the hearing, however, Shaping Academy's clinical director, Ms. Machado-Gonzalez, testified that Shaping Academy stopped treating Aetna members on July 18, 2025, well before the Provider Agreement terminated on September 6, 2025. She further acknowledged that Aetna has not invoked Section 5.4 nor has Aetna made any express request for Shaping Academy to continue providing services under any provision of the Provider Agreement since issuing the June 1, 2025, termination notice.

Accordingly, the discretionary continuity-of-care provision under Section 5.4 of the Provider Agreement does not apply, and Plaintiff identifies no other ongoing contractual obligation or prospective right warranting declaratory relief. Plaintiff's "declaratory" claim remains solely directed at adjudicating Aetna's alleged nonpayment of reimbursement claims. Because Section 7.2 of the Provider Agreement excludes only "injunctive relief or any other form of equitable relief" from arbitration and Plaintiff's declaratory claim is neither but instead an artfully labeled claim for breach, it falls within the Provider Agreement's requirement to arbitrate "any controversy or claim . . . including *breach*." *See* ECF No. 6 at 3 (emphasis added). Accordingly, Plaintiff is required to arbitrate its dispute with Aetna.

### B. Plaintiff's Motion for Preliminary Injunction

Even though Plaintiff cannot avoid the arbitration provision in the Provider Agreement and litigate its payment dispute with Aetna in this Court, Section 7.2 of the Provider Agreement expressly preserves either party's right to seek "injunctive relief" outside of arbitration. The Eleventh Circuit has held that injunctive relief carve-outs permit a court to adjudicate a request for injunctive relief even if the parties are required to arbitrate the underlying dispute. *See, e.g., Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 939–41 (11th Cir. 1997); *Variable Annuity Life Ins. Co. v. Laferrera*, 680 F. App'x 880, 886 (11th Cir. 2017) (internal quotation marks and citation omitted) ("[T]he language of § 3 does not preclude a district court from granting one party a preliminary injunction to preserve the status quo pending arbitration."); *LexisNexis Risk Sols. FL, Inc. v. Spiegel,* No. 14-80666-CIV, 2014 WL 3361910, at *3 (S.D. Fla. July 9, 2014), *vacated on other grounds,* No. 14-80666-CIV, 2014 WL 12531548 (S.D. Fla. Aug. 21, 2014) ("[T]he judicial carve-out leaves no room for ambiguity-the parties intended to allow 'a court of competent jurisdiction' to provide injunctive relief, whether preliminary or permanent.").

Exercising that limited authority here, this Court finds Plaintiff's Motion for Preliminary Injunction still fails on the merits.

**1. An Adequate Remedy at Law in Monetary Damages Warrants Denial of Plaintiff's Request for Injunctive Relief.**

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991); *see also Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994) ("It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity."). As the Supreme Court has instructed:

> [a] claim for money due and owing under a contract is quintessentially an action at law. *Almost invariably . . . suits seeking (whether judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages*, as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of a legal duty. And money damages are, of course, the classic form of legal relief.

*Great–West Life & Annuity Ins. Co v. Krudson*, 534 U.S. 204, 210 (2002) (emphasis added); *see, e.g.*, *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 702 (S.D. Fla. 2017) (applying *Great–West* and recognizing declaratory relief as proper only when the requested interpretation of a contract would not itself determine liability or the amount of damages).

Here, Plaintiff's Motion for Preliminary Injunction asks the Court to "enjoin Defendant . . . from taking any further steps to continue to withhold payment for services . . . and [to] issue payment immediately." *See* ECF No. 1-5 at 13. In substance, Plaintiff seeks monetary relief that would be available only through a merits determination of an arbitrable breach of contract claim arising from the Provider Agreement. Section 7.2 of the Provider Agreement's carve-out maintains a court's authority to grant equitable relief necessary to preserve the status quo or prevent irreparable harm. It does not authorize the adjudication of payment disputes under the Provider Agreement outside arbitration.

Further, this Circuit has made clear that purely economic injury, regardless of its severity, does not constitute irreparable harm, as such losses may be redressed through monetary damages. *See Viking Sec. Servs., Inc. v. United States*, No. 6:08-cv-720-Orl-19KRS, 2008 WL 1931311, at *3 (M.D. Fla. May 2, 2008) (citing *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987)); *see also Pizza Fusion Holdings, Inc. v. Burton Holdings LLC*, No. 14-62564-CV, 2015 WL 11197817, at *1 (S.D. Fla. Feb. 2, 2015) (finding no irreparable harm where plaintiff alleged only economic injury and failed to show that its business viability was seriously threatened, as monetary damages would provide adequate compensation). Here, the evidentiary hearing established that

11

the harm Plaintiff attributes to Aetna's alleged suspension of reimbursement payments, is "purely economic," consisting of substantially reduced cash flow, staff layoffs, and the need to borrow funds to cover operating expenses. Although these injuries are serious, they are compensable through monetary relief, which Plaintiff conceded at the evidentiary hearing, and thus cannot support a finding of irreparable harm.

> 2. **Plaintiff Fails to Show a Likelihood of Success as the Requested Declaratory Relief Addresses Past Conduct Rather Than Any Ongoing or Future Contractual Rights.**

The Eleventh Circuit has recognized that demonstrating a substantial likelihood of success on the merits is "generally the most important" of the four factors. *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 n.12 (11th Cir. 2020). Here, Plaintiff asserts a likelihood of success on the ground that "Aetna has clearly breached the contract." *See* ECF No. 1-5 at 8. As discussed *supra* § III.A.1, Plaintiff's allegations concern Aetna's past performance under the Provider Agreement, and the remedies sought arise from Aetna's conduct during the Agreement's operative term. Yet, "injury in the past does not support a claim for declaratory judgment." *See Michele F. Libman MD PA v. First Health Group Corp.*, No. 24-14119-CIV, 2024 WL 4564804, at *3 (S.D. Fla. Aug. 12, 2024) (citing *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).

Further, the record reflects that the Provider Agreement was terminated on September 6, 2025, and that Shaping Academy ceased treating Aetna members beforehand, rendering Section 5.4 continuity-of-care provision raised by Plaintiff inapplicable. A declaration that Aetna "violated" the Provider Agreement would merely adjudicate a dispute over past payments, which does not present a proper basis for declaratory judgment. *See Virga v. Progressive Am. Ins. Co.*, 215 F. Supp. 3d 1320, 1323–24 (S.D. Fla. 2016) (holding that declaratory relief is unavailable where the dispute concerns whether an unambiguous contract has been breached). Even if Plaintiff's claim was properly framed as a request to interpret the parties' respective rights, which

12

is not the case here, a declaratory action on these facts would not warrant any relief. *See Norris v. Freedom Life Ins. Co. of Am.*, No. 8:19-cv-1413-T-36CPT, 2020 WL 887707 (M.D. Fla. Feb. 24, 2020) (holding that declaratory relief was improper where plaintiff alleged only past denials of coverage and failed to show any ongoing or future refusal to pay benefits, explaining that the Declaratory Judgment Act requires a substantial and continuing controversy). Absent any ongoing obligation or future right requiring interpretation, Plaintiff is unlikely to succeed on its claim for declaratory relief.

### 3. Preliminary Relief That Alters the Status Quo Weighs Against the Balance of Equities and Undermines the Public Interest.

The "chief function" of preliminary injunctive relief is to "preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *See Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *4 (11th Cir. Aug. 22, 2024). "And where the injunction sought would require altering the status quo, the movant 'bears a particularly heavy burden in demonstrating its necessity.'" *Anago Franchising, Inc. v. CHMI, Inc.*, No. 09-60713-CIV-ALTONAGA/Brown, 2009 WL 5176548, at *11 (S.D. Fla. Dec. 21, 2009). Without resolving whether either party has complied with the Agreement, Plaintiff's requested relief would reorder the parties' positions and timing of performance by accelerating payment pending adjudication, rather than preserving the status quo. Compelling payment now imposes the immediate burden on Aetna without a merits determination, while Plaintiff's asserted injury is a delay redressable by damages. Accordingly, the balance of equities therefore weighs against preliminary relief.

Further, the public has an "interest in upholding and protecting freedom to contract and to enforce contractual rights and obligations," including a parties' agreement to arbitrate disputes. *See Mohr v. Bank of New York Mellon Corp.*, 393 F. App'x 639, 646 (11th Cir. 2010); *Skyjet, Inc. v. CSDS Asset Mgmt., LLC*, No. 22-CV-21651, 2022 WL 4769113, at *10 (S.D. Fla. Aug. 22,

2022), *report and recommendation adopted sub nom. Skyjet, Inc. v. CDS Asset Mgmt., LLC*, No. 22-21651-CIV, 2022 WL 16948979 (S.D. Fla. Nov. 15, 2022); *see also Pershing LLC v. Curi*, No. 12-62449-CIV, 2013 WL 785990, at *4 (S.D. Fla. Mar. 1, 2013) ("The strong federal policy favoring arbitration is well-settled"). As discussed above, Plaintiff has an adequate remedy at law in the form of damages for any alleged breach of the Provider Agreement. Because this dispute concerns reimbursement payments, Plaintiff's claim can be resolved through the parties' agreed process and, if warranted, remedied by a monetary award. It would diminish the public's interest in upholding contracts for the Court to allow Plaintiff to circumvent that process.

## CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendant's Motion to Compel Arbitration [ECF No. 6] be **GRANTED**, Plaintiff's Motion for Preliminary Injunction [ECF No. 1-5] be **DENIED**, and the Court direct the Parties to proceed to arbitration. It is further respectfully recommended that this matter be **STAYED** pending arbitration.

## IV. OBJECTIONS

The Parties will have **fourteen (14) days** from the date of this Omnibus Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain error, if necessary, in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers in Fort Lauderdale, Florida, on this 14th day of November 2025.

_____
**DETRA SHAW-WILDER**
**UNITED STATES MAGISTRATE JUDGE**

cc: Counsel of Record